IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.          ) | 2:04-cr-00293-LSC-JEO |
| ) | 2:05-cv-08083-LSC-JEO |
| MARK D. BONIELLA       ) | |

**MEMORANDUM OPINION**

The above-captioned matters are before the Court on the motion of Defendant Mark Boniella ("Defendant" or "Boniella") to vacate, set aside or correct his conviction or sentence under 28 U.S.C. § 2255.  (Motion (05-8083 Doc. 1)).[1]  Upon consideration, the Court finds that the motion is due to be denied.

**I. BACKGROUND**

The Grand Jury for the Northern District of Alabama returned a one count indictment on July 28, 2004, charging the defendant with tampering with consumer products in violation of 18 U.S.C. § 1365(a)(4).  (Indictment (04-0293 at Doc. 1)).  The defendant was arraigned on August 12, 2004, at which time attorney R. Michael Caddell, Jr., was appointed to represent him.

Counsel filed a request for disclosure of the discovery material pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 16.  (04-0293 at Doc. 5).  The United States responded to the request on August 19, 2004.  (*Id*. at Doc. 6).  The parties negotiated a plea agreement during the following six weeks.  A written plea agreement was filed with this Court on September 28, 2004.  (*Id*. at Doc. 9).  The defendant pled guilty before the undersigned on September 28, 2004.  (*Id*. at Doc. 21).

---

[1] References herein are to the document numbers assigned by the Clerk of the Court in each of the intertwined cases.  The documents will be distinguished by the court case number.

A sentencing hearing was set for December 22, 2004. The "Presentence Investigation Report" was prepared and disclosed to the parties on or about November 3, 2004. (*Id*. at Doc. 11). The sentencing hearing occurred as scheduled. (*Id*. at Doc. 20). The defendant was sentenced, *inter alia*, to seventy months custody and supervised release of three years. (*Id*. at Doc. 13). He did not file a notice of appeal challenging the plea or sentence.

The defendant filed the present motion on October 27, 2005. (Motion). He asserts as follows:

1. His counsel was ineffective for failing to adequately discuss with the defendant the provisions contained in the plea agreement.

2. His counsel was ineffective for failing to adequately discuss with the defendant the provisions contained in the Presentence Investigation Report.

3. His counsel was ineffective for failing to object to two paragraphs in the Presentence Investigation Report involving sentencing enhancements.

4. His counsel was ineffective for failing to argue for a downward departure from the Sentencing Guidelines based on aberrant behavior pursuant to U.S.S.G. § 5K2.20.

5. His counsel was ineffective for failing to argue for a downward departure from the Sentencing Guidelines based on the Commentary to U.S.S.G. § 2N1.1 which provides for such departure "in the unusual case in which the offense did not cause a risk of death or serious bodily injury, and neither caused nor was intended to cause bodily injury."

*Id*. at 11-12. The Court required the United States to appear and show cause why the requested relief should not be granted. The United States filed a response. (Response (05-8083 at Doc. 6)). The defendant was then afforded an opportunity to reply. He filed a traverse (Traverse) and an addendum thereto (Addendum). (05-8083 at Doc. 12 & 13).

## II.  DISCUSSION

### A.  The Applicable Standard

All of the defendant's allegations center on the purported ineffectiveness of his counsel. To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that that deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Bell v. Cone*, 535 U.S. 685 (2002) (affirming the *Strickland* standard for reviewing ineffective assistance of counsel claims); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (applying two-part test of *Strickland*).  More specifically, the defendant must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial would have been different.  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's actions under the first prong of *Strickland*, there is a presumption that the performance was reasonable.  *Yordan*, 909 F.2d at 477.  Specifically, the "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'"  *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303-04 (11th Cir. 2000) (footnotes omitted).  The Eleventh Circuit has described a defendant's burden as follows:

> . . . . Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
> > The test has nothing to do with what the best lawyers would have

> done.  Nor is the test even what most good lawyers would have done.  We
> ask only whether some reasonable lawyer at the trial could have acted, in
> the circumstances, as defense counsel acted at trial. . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.
>
> . . . .  Thus, in order to show that counsel's performance was unreasonable, the
> petitioner must establish that *no competent counsel would have taken the action
> that his counsel did take*. . . .

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (some internal citations omitted and italics in original).

With regard to the second prong under *Strickland*, it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding.  *Robinson v. Moore,* 300 F.3d 1320, 1343-44 (11th Cir. 2002).  To succeed on an ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

"It is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel."  *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord*, *Robinson v. Moore*, 300 F.3d at 1343.

**B.  Analysis**

The Untied States asserts that "[a]ll of [the defendant's] allegations of ineffective assistance of counsel should be rejected because he has not alleged facts that demonstrate deficient performance by counsel, and more importantly, he has not demonstrated prejudice as to any of those claims.  A review of the transcripts of the plea hearing and of the sentencing hearing shows that the [defendant] was not prejudiced." (Response at 7).  The defendant disagrees.

(Traverse at 1).

### 1. Failure to Review the Plea Agreement

With regard to the allegation that his counsel failed to adequately review the plea agreement with the defendant prior to the guilty plea hearing, an examination of the plea hearing transcript directly refutes this allegation. At the beginning of the plea colloquy, the undersigned advised the defendant that he was going to be placed under oath and that all of his answers to the Court's questions would be material to the proceeding. (Plea Tr. (04-0293 at doc. 21) at 2). He was also told that it was "extremely important that [he] answer all [the] questions completely and honestly. If [he] fail[ed] to do that, [he would] be or could be charged with the additional offense of perjury because you are going to be placed under oath." *Id*. at 2-3. The defendant responded that he understood. *Id*. at 3. Thereafter, he was placed under oath. *Id*.

The undersigned then asked the defendant if he was satisfied with his counsel's performance, specifically asking, "Has he been able to explain all the documents that you have encountered in this case . . . to your satisfaction?" To which he responded, "Yes, sir." *Id*. at 5. A few moments later, the defendant specifically was asked about the plea agreement. The colloquy is as follows:

> The Court: Plea agreements are permissible but you are under an obligation, your attorney's under an obligation and the government's under an obligation to disclose not only the existence of any plea agreement but the terms and conditions of that plea agreement. A document has been provided to me called a plea agreement and conditions. That document purports to have your signature on page seven and then again on page nine. Did you sign that document at those places?
>
> The defendant: Yes, sir, I did.
>
> The Court: When you signed the document, did you have the opportunity

>prior to that to read the document before you signed it?
>
>>The defendant: Yes, sir, I did.
>
>>The Court: And did you, in fact, read that document before you signed it?
>
>>The defendant: Yes, sir, I did.
>
>>The Court: And did you go over it with your attorney as well?
>
>>The defendant: Yes, I did.
>
>>The Court: Based upon your reading of the document and your attorney's explanation of it to you, do you believe that you understand all the terms and conditions contained in that document?
>
>>The defendant: Yes, sir, I do.

*Id*. at 11-12.

To the extent that the defendant alleges that he had inadequate time to review and fully understand the consequences of the plea agreement, the Court is not impressed.  To the extent he asserts that he was anticipating a sentencing range of "41-51" months premised on earlier conversations with counsel instead of the sentencing range ultimately determined, the Court notes that the plea agreement only requires that the United States recommend a sentence at the low end of the applicable range, it does not specify numeric periods.  Additionally, it describes the applicability of the Sentencing Guidelines and states that "[t]he defendant is further aware that the Court ultimately calculates the Guidelines range applicable to this case and is not bound by the defendant's or the United States Attorney's calculations."  (Plea Agreement (04-0293 at doc. 9) at 4).  It further states that "[t]he Court may even decide that the recommended sentence is not within the Guidelines range and may not follow the recommendation for that reason.  Also, the Court may, for just cause, impose a sentence above or below the guidelines range . . . ."  *Id*.

The defendant fails to recognize that his decision to sign the agreement and enter the plea is what is controlling, not the preliminary discussions of counsel in this case.

To the extent that the defendant asserts that at the plea hearing he simply was "follow[ing] the lead of [his] attorney with regard to the statements made," the Court is once again not impressed. (Traverse at 2). As the foregoing colloquy demonstrates, he was made aware of the consequences of his statements at the plea hearing. He cannot now be permitted to disregard the consequences of his actions on these unsupported, self-serving allegations.[2]

### 2. Failures Related to the Presentence Investigation Report

The petitioner next alleges that counsel did not adequately review the Presentence Investigation Report ("PSR") with him. This second claim is really the segue to his remaining three claims concerning (1) the sentencing enhancements (Claim Three), (2) the failure of counsel to seek a downward departure based on aberrant behavior (Claim Four), and (3) the failure of counsel to seek a downward departure based on the Commentary to U.S.S.G. § 2N1.1 which provides for such a departure when an offense did not cause a risk of death or serious bodily injury and did not cause or was not intended to cause bodily injury (Claim Five).

As to the second articulated claim, the United States counters that "nowhere in the record is there any evidence that the [defendant] did not have ample opportunity to review and object to the PSR." (Response at 9). It further notes that, at the beginning of the sentencing hearing, the Court asked the defendant and his attorney if each of them had the customary 35 days to review the presentence report. The attorney responded, "Yes, Your Honor." (Sent. Tr. at 2). There was

---

[2] In his traverse, the defendant attaches purported notes from his counsel. Although these tend to support the defendant's assertions regarding prior discussions with counsel, they do not change the binding nature of the plea agreement and do not support his contention that he was simply responding to the Court following counsel's lead. (Traverse at Attachment).

no response from the defendant. The Court agrees with the United States that if the defendant "truly believed that he had not had ample opportunity to review the PSR, he should have told the Court at that time." (Response at 9). This is particularly true because the Court later afforded the defendant an opportunity to speak. (Sent. Tr. at 4-5). The defendant responded, "Your Honor, I deeply regret what I've done. Everything in the report is accurate." (*Id*. at 5).[3]

### 3. The Sentencing Enhancements

In the third claim, the defendant asserts that his "counsel proved to be ineffective and deficient by not filing objections to <u>two</u> enhancements imposed on me . . . ." (Motion at 8). The enhancements that the defendant is complaining about concern paragraphs 17 and 18 in the PSR. Paragraph 17 is a victim related enhancement which increases the offense level pursuant to U.S.S.G. § 3A1.1, comment (n.2(B)) and § 3B1.3. Paragraph 18 is a "Role in the Offense" enhancement premised on the defendant's abuse of a position of trust as discussed in U.S.S.G. § 3B1.3.

The United States argues that a "review of the written factual basis which is contained in the plea agreement as well as a review of the oral factual basis stated by the Government and which the Movant agreed to during the plea colloquy demonstrates why these adjustments were appropriate. Moreover, when given the opportunity to object, Movant stated that 'Everything that was said in the report is accurate.'" (Response at 10). The United States further states that "the Court, in essence, made findings during the sentencing hearing which would overrule such objections, had they been made." *Id*.

---

[3] Additionally, as will be shown below, the defendant has not demonstrated the requisite prejudice to warrant any relief.

### a. Vulnerable Victim Enhancement

With regard to the victim related adjustment, the applicable guideline states, "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." U.S.S.G. § 3A1.1(b)(1).[4] The PSR provides that

> . . . the defendant should have known in his capacity within the medical field (registered nurse) that patients are vulnerable particularly when they are in extreme physical pain. Select Specialty Hospital [(where the defendant worked) is a facility that renders care to long-term acute patients. The defendant knew or should have known that the victim and potential victims of the offenses were vulnerable from the mere admission into this type of facility. Pursuant to U.S.S.G. § 3A1.1(b)(1), the offense level is increased by two levels.

(PSR at ¶ 17). This statement is supported by the factual basis presented in the plea agreement and at the plea hearing. Particularly, the statement shows that at least one patient who was being cared for on the unit where the defendant worked had undergone major surgery and was given one of the altered patches. (Plea Agreement at 2). It further provides that her husband noted that "his wife complain[ed] of pain . . . [and] it was discovered that his wife had a tampered patch

---

[4] The Guidelines further describe a "vulnerable victim" in relevant part as follows:

> For purposes of subsection (b), "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under 1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.
>
> Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.
>
> Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

U.S.S.G. § 3A1.1, comment (n.2).

adhered to her body." *Id*. At the sentencing hearing, the Court noted that the defendant held a position of trust as a nurse and that certain victims suffered unusual pain due to the his criminal behavior. (Sent. Tr. (04-0293 at doc. 20) at 6). Although, the Court made these statements while overruling defense counsel's oral motion for a downward departure, it shows that the present complaints regarding the vulnerable victim enhancement are without merit.

To the extent that the defendant argues that counsel should have objected to the PSR statement that the "mere admission to this type of facility makes a person vulnerable," the Court finds this to be insufficient in view of the factual basis supporting the defendant's conviction. (Traverse at 5). Similarly, to the extent that the defendant argues that his counsel should have reviewed the medical records of the particular patients to "clarify" their physical and mental status at the time at issue, the Court is unimpressed. *Id*. The defendant's challenge to the vulnerability of patients in a hospital setting is unavailing. As just noted, at least one patient who was given an altered patch just had surgery. She certainly was vulnerable under the circumstances. It is difficult to imagine that an inpatient resident at the hospital would not be in a vulnerable state. The Court fails to see how the defendant's desire to examine the medical records of the patient victims would have made a difference. The defendant's conclusory statement that he "strongly believe[s] that the outcome would have been different" if the files had been reviewed and the matter discussed in open court is of no import in this instance.

Accordingly, the defendant has not satisfied either prong under *Strickland*. Thus, he is entitled to no relief on this claim.

### b. Role in the Offense

With regard to the second part of the third issue, the defendant's role in the offense, the

applicable Sentencing Guidelines provision states that "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. § 3B1.3.[5] The PSR states:

> The defendant abused a position of public and private trust, and he used his special skill as a nurse in a manner that significantly facilitated the commission of the offense. The defendant knew exactly how to extract the drug from the Durasegic patches and then how to make the patch look intact. A patient entrusts their care to medical staff, especially a nurses [sic], who administer their medicines. . . .

(PSR at ¶ 18).

The defendant argues that the facts are disputed and counsel should have objected to them so that they could have been heard. (Traverse at 7). Contrary to the defendant's present assertion, the record establishes that the facts were not disputed at the time of the plea and sentencing. His present protestations do not change the fact that he held a position of trust as a registered nurse taking care of patients in a hospital setting. Although he may have been under monitoring by the Alabama Board of Nursing because of addiction issues, he still served in a

---

[5] The Guidelines' commentary further define a position of trust as follows:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3, Commentary n.1.

position of trust under the Guidelines.  This claim is therefore without merit.

### 4. Aberrant Behavior Downward Departure

The defendant next asserts that counsel was ineffective in that he did not argue for a downward departure on his sentence based on the assertion that his conduct constituted aberrant behavior under U.S.S.G. § 5K2.20.  The United States responds that "[w]hile counsel for [the defendant] may not have filed a written request for a downward departure due to the 'aberrant behavior' . . . , counsel did make an oral request for such a downward departure during the sentencing hearing, and the Court considered the argument and denied it."  (Traverse at 11).

The sentencing transcript shows that counsel did ask the Court to consider a downward departure for the defendant.  (Sent. Tr. at 3-4).  The Court, however, specifically addressed the request and denied the same, finding no reason to depart from the applicable sentencing range.  *Id*. at 5-6.

The applicable provision states that a downward departure may be warranted in an exceptional case "if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20.  Upon further review at this juncture, the Court again finds that a downward departure for aberrant behavior is not in order for a number of reasons.  First, this was not a single occurrence or single criminal transaction.  The conduct occurred over a month period and involved at least 18 patches. (Indictment).  Additionally, the defendant "was terminated from UAB due to [a] violation of his contract with [the] administration[ ] when he gained access to a narcotic medicine cabinet." (PSR at ¶ 43).  Second, this conduct is not "a marked deviation by

the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20.  Paragraph 38 of the PSR states that the defendant

> . . . indicated that he had used marijuana, alcohol, Xanax, and opiates (Fentanyl).  The defendant reported that he used marijuana on a daily basis from 1983 to 1994.  He indicated that he began smoking marijuana in1979. . . . Boniella reported using Xanax on two occasions.  He indicated that he began using opiates, in particular "Fentanyl", in 2001.  He used periodically from 2001 until 2003 for a total of nine months.  Boniella reported that he last used "Fentanyl" on November 21, 2003.

(PSR at ¶ 38).  This is not evidence of "an otherwise law-abiding life" warranting a downward departure.  U.S.S.G. § 5K2.20.

Premised on the foregoing alone, the defendant is entitled to no relief on this claim.

### 5. Downward Departure

The defendant lastly asserts that counsel was ineffective in that he did not move for downward departure based upon an argument that this was an unusual case in which the offense did not cause a risk of serious bodily injury and was not intended to cause bodily injury.  (Motion at 11-12).  The United States again responds that the Court "actually addressed this argument even though it was not couched in the specific terms."  (Response at 11-12).

The applicable Guideline commentary provides that "[i]n the unusual case in which the offense did not cause a risk of death or serious bodily injury, and neither caused nor was intended to cause bodily injury, a downward departure may be warranted." U.S.S.G. § 2N1.1, commentary n.1.  The sentencing transcript shows that the Court found nothing warranting a downward departure in this instance.  Additionally, the commentary language demonstrates the discretionary nature of any downward departure.  The Court upon further review again finds no basis for such a departure.  Accordingly, counsel was not ineffective in failing to ask for a

downward departure.  Still further, the defendant can show no prejudice in failing to move for the departure.

## CONCLUSION

Premised on the foregoing, the defendant's motion is due to be denied.[6]  An appropriate order will be entered.

Done this 28th day of June 2007.

_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
124153

---

[6] The Court also agrees with counsel for the United States that the defendant has not alleged facts sufficient to entitle him to an evidentiary hearing, and his claims should be rejected without such a hearing.  See *Blacklidge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 U.S. 1551, 1559 (11th Cir. 1991); *United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991).